Garrett J. Olexa – 016685
golexa@jsslaw.com
Jimmie W. Pursell, Jr. - 19957
jpursell@jsslaw.com
Chris M. Mason – 019891
cmason@jsslaw.com
**JENNINGS, STROUSS & SALMON, P.L.C.**
A Professional Limited Liability Company
One East Washington Street
Suite 1900
Phoenix, Arizona 85004-2554
Telephone: (602) 262-5911
MinuteEntries@jsslaw.com

Attorneys for MG Pharmacy, LLC

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| MG Pharmacy, LLC, an Arizona limited liability company<br><br>Plaintiff,<br><br>vs.<br><br>Cardinal Health 110, LLC; a Delaware limited liability company; and Cardinal Health 112, LLC, a Delaware limited liability company<br><br>Defendants. | No.<br><br>**VERIFIED COMPLAINT** |

Plaintiff MG Pharmacy, LLC (collectively "MG Pharmacy" or "Plaintiff"), by way of Complaint against Defendants, Cardinal Health 110, LLC and Cardinal Health 112, LLC (unless otherwise stated, Cardinal Health 110, LLC and Cardinal Health 112, LLC shall be referred to collectively as "Cardinal Health" or "Defendants"), hereby allege as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. MG Pharmacy operates a retail pharmacy location at 4025 West Bell Road, Phoenix, Arizona and, at all times relevant herein, has maintained its principal place of business in the Maricopa County, Arizona.

2. MG Pharmacy is licensed to operate a retail pharmacy by United States Department of Justice Drug Enforcement Agency and the Arizona State Board of Pharmacy.

3. MG Pharmacy has a number of pharmacists, including Morris Gortler, David Gortler, and a number of part-time relief pharmacists.

4. Defendant, Cardinal Health 110, LLC, is a Delaware limited liability company duly authorized to transact and actually transacting business in the State of Arizona as a foreign company.

5. Defendant, Cardinal Health 112, LLC, is a Delaware limited liability company duly authorized to transact and actually transacting business in the State of Arizona as a foreign corporation.

6. All acts alleged herein occurred in Maricopa County, Arizona.

7. This Court has original jurisdiction of this case pursuant to 28 U.S.C. §1332 because the value of the claims exceeds $75,000 exclusive of interest and costs, and because this case involves citizens of different states.

8. Venue is proper in this district under 28 U.S.C. § 1391(b)(3).

## BACKGROUND

The Agreement between Cardinal Health and MG Pharmacy

9. MG Pharmacy has entered a number of Member Certification Agreements with Cardinal Health to purchase pharmaceutical products from Cardinal Health.

10. The most recent Member Certification Agreement entered by Cardinal Health and MG Pharmacy was signed by MG Pharmacy on March 15, 2019.

11. The Member Certification Agreement dated March 15, 2019 incorporates by reference the Prime Vendor Agreement between the American Associated Pharmacies and the Defendants dated September 1, 2018 (collectively the Member Certification Agreement and the Prime Vendor Agreement shall be referred to herein as "the Agreement").

12. Under the Agreement, Cardinal Health agreed to supply MG Pharmacy with pharmaceutical products.

13. Under the Agreement, MG Pharmacy was obligated to purchase pharmaceutical products from Cardinal Health pursuant to the prices set forth in a specific pricing matrix.

14. Cardinal Health subsequently verbally agreed to permit MG Pharmacy to order up to 3,500 dosage units combined of oxycodone 15 mg and 30 mg tablets.

15. MG Pharmacy kept its orders of oxycodone within the 3,500 dosage unit limit set by Cardinal Health.

16. MG Pharmacy fully complied with the terms of the Agreement and amendments to the same and met all its obligations to Cardinal Health.

Cardinal Health Breaches the Agreement

17. On or about September 13, 2021 Patrick Dudley, Cardinal Health's Director, Quality and Regulatory Management, verbally conveyed to MG Pharmacy that Cardinal Health would no longer be selling any controlled substances, and certain non-controlled substances (such as Gabapentin and Neurontin), to MG Pharmacy.

18. Mr. Dudley initially alleged that MG Pharmacy was dispensing too many oxycodone prescriptions but, after realizing that was not correct, he reinstated distributions to MG Pharmacy.

19. On September 20, 2021 Mr. Dudley called MG Pharmacy a second time requesting a dispensation history for oxycodone for the past three months and for public information about a specific nurse practitioner prescriber.

20. During the September 20th call, Mr. Dudley claimed MG Pharmacy had filled too many prescriptions for oxycodone from a single prescriber and that because Mr. Dudley doubted the prescriber's validity he was again terminating distributions of all controlled substance and certain non-controlled substances to MG Pharmacy.

21. Cardinal Health did not give MG Pharmacy any opportunity to explain what Cardinal claimed was the basis for its decision to terminate distribution.

22. The single prescriber nurse practitioner that Cardinal Health cited as a red flag, has a valid license to practice medicine in the capacity as a nurse practitioner and a

3

valid NPI and DEA number and works at the locally owned pain center which has been in business for many years.

23. Prescriptions for controlled substances from the pain center where the nurse practitioner works are processed through Arizona's Electronic Prescribing of Controlled Substances (EPCS) application.

24. The EPCS provides safeguards such as a two-factor proof of identity for prescribers. The EPCS also provides that only designated prescribers at the practice can use the application. Prescriptions transmitted through EPCS are much more secure than paper prescriptions because they cannot be stolen, tampered with, or lost and the prescriber's DEA number is no longer out in circulation as it would be with paper prescriptions.

25. Arizona prescribers are required to access information from the Prescription Drug Monitoring Program (PDMP), a state run database that collects patient-specific prescription information, at the time of dispensing to a pharmacy. Additionally, before a prescription for an opioid analgesic or benzodiazepine controlled substance is filled, pharmacists are required to check the PDMP. The reliance upon the PDMP is designed to reduce diversion of controlled substances.

26. At no time before Cardinal Health decided to stop all distributions of controlled substances and certain no-controlled substances to MG Pharmacy did Cardinal Health contend that MG Pharmacy was being cut off because Cardinal Health believed that MG Pharmacy constitutes "an unreasonable risk of diversion."

27. At no time before Cardinal Health decided to stop all distributions of controlled substances and certain no-controlled substances to MG Pharmacy did Cardinal Health contend that MG Pharmacy was being cut off because MG Pharmacy pharmacist David Gortler's license had previously temporarily lapsed due to an oversight.

Cardinal Health Refuses to Resume Distribution to MG Pharmacy

28. On September 29, 2021, counsel for Cardinal Health confirmed in writing that it would not resume distributions to MG Pharmacy.

4

29. On September 29, 2021, Cardinal Health (through counsel) asserted that Cardinal Health "will not resume distributions of controlled substances to MG Pharmacy" because it has determined that MG Pharmacy constitutes "an unreasonable risk of diversion," invoking for the first time contract language for refusing to resume distribution.

30. On September 29, 2021 Cardinal Health (through counsel) also claimed that Cardinal's prior decision to terminate distribution could also be supported by the fact that a MG Pharmacist David Gortler had inadvertently and temporarily allowed his license to lapse, that MG Pharmacy had entered a Consent Agreement with the Arizona Board of Pharmacy, that MG Pharmacy filled numerous prescriptions written by a nurse practitioner for oxycodone 15 mg and 30 mg, and that MG did not respond quickly enough when it was asked to provide "relevant" information about the nurse practitioner.

31. On September 30, 2021 MG Pharmacy (through counsel) responded to each of the newly alleged reasons Cardinal Health was now reportedly relying upon as a basis to refuse to resume distribution and concluded by requesting reinstatement.

32. The temporary expiration of David Gortler's license in late 2016 was remedied by early January 2017 as soon as Mr. Gortler renewed the license and paid the late fee.

33. The Controlled Substance Prescription Monitoring Program (CSPMP) complaint originated from an aggravated/confrontational third party and had nothing to do with any purported diversion.

34. The Consent Agreement subsequently entered contains no conclusions of law that MG Pharmacy violated any law or rule.

35. The Arizona Board of Pharmacy investigation concluded that some of the previous deleted prescriptions related to negative or incorrect chargebacks from insurers should be corrected and MG Pharmacy made some corrections.

36. The speed at which MG Pharmacy furnished Cardinal Health with publicly available information about a validly licensed nurse practitioner is not a contractually

7894938v1(70718.1)

supported or otherwise valid basis for terminating or refusing to resume distributions to MG Pharmacy.

37. Diversion of *any* narcotic, including oxycodone, at MG Pharmacy would be impossible as the only prescriptions that MG Pharmacy fills are though the state-mandated e-prescribing software system.

38. Despite the request made by MG Pharmacy, Cardinal Health refused to reinstate the Agreement and renew distribution of all controlled and certain non-controlled substances to MG Pharmacy.

39. Due to the highly regulated nature of the pharmacy business, MG Pharmacy cannot simply sign a distribution agreement with a new wholesaler and resume business immediately, but rather, must undergo lengthy review and scrutiny from any potential new wholesale distributor.

40. The review process from a new wholesale distributor can take a long time during which time MG Pharmacy would have no controlled and certain on-controlled medications and would face immediate and irreparable harm from lost sales and lost customers.

41. There has never been any finding by any governmental agency or body that MG Pharmacy was or is an unreasonable risk of being a company that diverts controlled substances.

## COUNT ONE

**(Declaratory Judgment)**

42. Plaintiff hereby repeats and reiterates the allegations set forth above as though fully set forth herein.

43. Pursuant to 28 U.S.C. §2201, after reasonable notice and hearing, a person interested in a contract, or whose rights, status, or legal relations are affected by a contract, may have the Court determine, among other things, any question of construction or validity under the contract and obtain a declaration of rights, status or other legal relations thereunder.

7894938v1(70718.1)

44. MG Pharmacy and Cardinal Health entered into the Agreement for the purchase of pharmaceutical products.

45. In early 2012, Defendants suspended shipments to MG Pharmacy and ultimately terminated the Agreement.

46. In response to the 2012 suspension, MG Pharmacy brought suit and obtained a temporary restraining order enjoining Defendants from suspending shipments or terminating the contract.

47. In September 2021 Cardinal Health again terminated distribution of all controlled substances and some non-controlled substances to MG Pharmacy.

48. The current termination, and the prior improper termination by Cardinal Health, make it clear this subject matter is ripe as there is a substantial controversy between parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment, and that declaratory action will serve a useful purpose in clarifying the legal relations at issue.

49. Pursuant to the Agreement, Cardinal Health was required to supply MG Pharmacy with pharmaceutical products so long as MG Pharmacy remained a licensed pharmacy, ordered pharmaceuticals within the allotted amounts, and paid for the same.

50. MG Pharmacy has remained a licensed pharmacy, has not exceeded the allotted amount of pharmaceuticals dictated by Cardinal Health, and all pharmaceuticals sold to MG Pharmacy have been paid for.

51. As a direct and proximate result of all of the above factual allegations, MG Pharmacy is entitled to a declaratory judgment in its favor stating, at a minimum, the following:

(i) the Agreement (as defined herein) and all of its provisions are subject to the implied covenant of good faith and fair dealing, which duty requires, among other things, that performance of contractual duties left to one's discretion will be undertaken in an honest good faith manner and that such discretion will be properly supported and well-reasoned, and not made arbitrarily, on a

whim, out of ill-will, in a manner designed to take opportunistic advantage of the other party, or in a manner that evades the spirit of the bargain.

(ii) the language in Section 17(d) of the Agreement, which provides in part: "*Cardinal Health may, in its sole discretion, immediately suspend, terminate, or limit the distribution of controlled substances, listed chemicals, and other products monitored by Cardinal Health to the Member at any time if Cardinal Health believes that the continued distribution of such products to the Member may pose an unreasonable risk of the diversion of such products based on the totality of the circumstances and such other considerations as may be deemed relevant by Cardinal Health*" if being relied upon by Cardinal Health, must be analyzed before termination or suspension is decided by Cardinal Health.  Further, when analyzed by Cardinal Health in relation to the then existing circumstances, the discretion referenced must not be arbitrary or capricious.  Rather, any decision to suspend or terminate distribution must be based on supportable facts and investigation that demonstrate, after conferring in good faith with the pharmacy, a causal relationship between the facts being relied upon and conclusion that the pharmacy may pose an unreasonable risk of diversion.

(iii) in this situation, Cardinal Health's decision to terminate distributions, based on pre-termination allegations that MG Pharmacy had filled too many prescriptions for oxycodone from a single prescriber whose validity Cardinal Health reportedly doubted, violated the implied covenant of good faith and fair dealing as the facts cited by Cardinal Health, do not in and of themselves, support the conclusion that MG Pharmacy may pose an unreasonable risk of diversion and thus MG Pharmacy has a right under the Agreement to, among other relief, have distributions resume;

(iv) based on the terms of the Agreement and the implied covenants existing thereunder, a temporary and inadvertent lapse of an individual pharmacist's

|     |       |                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                    |
| --- | ----- | ---- |

           license, which was subsequently reinstated and remains in good standing, particularly where the pharmacy has more than one pharmacist as MG Pharmacy does, does not in and of itself, support the conclusion that MG Pharmacy may pose an unreasonable risk of diversion and thus is not proper grounds under the Agreement for not resuming distributions of controlled substances to MG Pharmacy;

(v) A reasonable and good faith interpretation and application of Section 5 of the Agreement (in the Prime Vendor Agreement), which provides in part: "Cardinal Health may terminate this Certification Agreement and Member's participation under the Prime Vendor Agreement immediately in the event it *reasonably* determines that *the Member is in breach* of this paragraph," is that a breach does not exist when the Member pharmacy has a license that has never lapsed, the Member has pharmacists whose licenses have never lapsed, and only one pharmacist had a license that only temporarily, unknowingly and inadvertently lapsed and was reinstated by the Arizona Board of Pharmacy in accordance with A.R.S. §32-1925;

(vi) based on the terms of the Agreement and the implied covenants existing thereunder, the substance of the Consent Agreement entered between the Arizona Board of Pharmacy and MG Pharmacy, is not a valid justification for not resuming distributions of controlled substances to MG Pharmacy because it does not provide a sufficiently causally related basis for concluding that MG Pharmacy may pose an unreasonable risk for diverting controlled substances;

(vii) the facts in this case do not provide a sufficient cause to conclude that MG Pharmacy may pose an unreasonable risk of diverting controlled substances; and,

(viii) alternatively, the scope of the terminated distributions to MG Pharmacy, which scope includes all controlled substances and some non-controlled

9

substances, is overly broad and inconsistent with the allegation from Cardinal Health that MG Pharmacy posed an unreasonable risk of distributing oxycodone.

52. As a direct and proximate result of the aforementioned, MG Pharmacy is entitled to its attorneys' fees and costs pursuant to A.R.S. §12-341 and A.R.S. §12-341.01.

WHEREFORE, Plaintiff, MG Pharmacy, hereby demands judgment in its favor and against Defendants, Cardinal Health 110, LLC and Cardinal Health 112, LLC declaring as follows:

(a) the statements set forth in paragraph 49, subparts (1) – (vii)

(b) attorneys' fees and costs pursuant to A.R.S. §12-341 and A.R.S. §12-341.01; and

(c) such further relief as the Court may deem equitable and just.

## COUNT TWO

### (Specific Performance/Injunctive Relief)

53. Plaintiff hereby repeats and reiterates the allegations set forth above as though fully set forth herein.

54. MG Pharmacy and Cardinal Health entered into the Agreement for the purchase of pharmaceutical products.

55. Pursuant to the terms of those Agreement, Cardinal Health was required to supply MG Pharmacy with pharmaceutical products during the term of the contract so long as MG Pharmacy maintained its license and paid for products purchased.

56. The terms of the Agreement are certain and fair.

57. MG Pharmacy has not acted inequitably and has fully performed its obligations as required by the Agreement.

58. Requiring Cardinal Health to perform under the terms of the Agreement will not inflict a hardship upon Cardinal Health.

7894938v1(70718.1)

59. Specific performance may be decreed where the goods are unique and/or the contract involves a particular or peculiarly available source and pharmaceutical products fall within that category. A.R.S. § 47-2716(A).

60. As a direct and proximate result of the aforementioned, MG Pharmacy will suffer irreparable harm for which it has no adequate remedy at law should Cardinal Health be permitted to terminate the Agreement.

61. As a direct and proximate result of the aforementioned, MG Pharmacy is entitled to specific performance/injunctive relief requiring Cardinal Health to reinstate the Agreement and to resume distribution of all the controlled and non-controlled substances Cardinal Health has been withholding from MG Pharmacy.

62. As a direct and proximate result of the aforementioned, MG Pharmacy is entitled to its attorneys' fees and costs pursuant to A.R.S. §§12-341 and A.R.S. §12-341.01.

WHEREFORE, Plaintiff MG Pharmacy, hereby demands judgment in its favor and against Defendants, Cardinal Health 110, LLC and Cardinal Health 112 LLC for:

(a) specific performance/injunctive relief requiring Cardinal Health to reinstate the Agreement, to resume immediate distribution as required by the Agreement, and to fully perform under the contract for the remainder of the contractual term;

(b) attorneys' fees and costs pursuant to A.R.S. §12-341 and A.R.S. §12-341.01; and

(c) such further relief as the Court may deem equitable and just.

## COUNT THREE

### (Breach of Contract)

63. Plaintiff hereby repeats and reiterates the allegations set forth above as though fully set forth herein.

64. Under the Agreement, Cardinal Health was required to supply MG Pharmacy with pharmaceutical products.

65. MG Pharmacy fully complied with its obligations under the Agreement.

7894938v1(70718.1)

66. Cardinal Health terminated distributions of controlled substances and certain non-controlled substances to MG Pharmacy in violation of the terms of the Agreement.

67. Cardinal Health's termination of distributions to the MG Pharmacy was not in accordance with the express or implied terms of the Agreement.

68. As a direct and proximate result of the aforementioned, Cardinal Health has materially breached its obligations pursuant to the Agreement to the damage of MG Pharmacy.

69. As a direct and proximate result of the aforementioned, Cardinal Health is in breach of contract and liable to MG Pharmacy for direct and consequential damages, including lost profits.

70. As a direct and proximate result of the aforementioned, MG Pharmacy is entitled to its attorneys' fees and costs pursuant to A.R.S. §12-341 and A.R.S. §12-341.01.

WHEREFORE, Plaintiff MG Pharmacy, LLC, hereby demands judgment in its favor and against Defendants, Cardinal Health 110, Inc. and Cardinal Health 411, Inc. for:

(a) breach of contract;

(b) compensatory, consequential, and incidental damages in an amount to be proven at trial;

(c) attorneys' fees and costs pursuant to A.R.S. §12-341 and A.R.S. §12-341.01; and

(d) such further relief as the Court may deem equitable and just.

## COUNT FOUR

**(Tortious Interference with Business Contracts and/or Business Expectancies)**

71. Plaintiff hereby repeats and reiterates the allegations set forth above as though fully set forth herein.

72. Cardinal Health has at all times relevant herein been knowledgeable of the business relationship and continued business expectancy between MG Pharmacy and sub-distributor Associated Pharmacies, Inc. (API).

12

73. Cardinal Health intentionally and wrongfully interfered and engaged in conduct to induce a termination of the relationship and expectancy between MG Pharmacy and API.

74. Upon information and belief, Cardinal Health informed, recommended or directed Associated Pharmacies, Inc. (API) to cease distributions of controlled substances and certain non-controlled substances to MG Pharmacy.

75. As a direct and proximate result of the aforementioned conduct, MG Pharmacy has been damaged for which Cardinal Health is liable.

76. The aforementioned conduct by Cardinal Health in intentionally interfering with MG Pharmacy's business contracts and/or business expectancies with API by improper motive and means.

77. During all times relevant herein, Cardinal Health intentionally interfered with MG Pharmacy's contractual relations and/or continued business expectancies with API without a legitimate reason and with ill-will toward MG Pharmacy.

78. As a direct and proximate result of the aforementioned, Cardinal Health has damaged MG Pharmacy and is liable for the same.

79. The aforementioned conduct of Cardinal Health was wrongful and said conduct was engaged in a wanton, reckless, and spiteful manner with the ill will and/or reckless indifference for the interests of MG Pharmacy, thereby subjecting Cardinal Health to punitive or exemplary damages.

WHEREFORE, Plaintiff MG Pharmacy hereby demands judgment in its favor and against Defendants, Cardinal Health 110, LLC and Cardinal Health 112, LLC for:

(a) tortious interference with contractual relations and business expectancy;

(b) compensatory, consequential, and incidental damages in an amount to be proven at trial;

(c) punitive or exemplary damages in an amount to be determined at trial; and

(d) such further relief as the Court may deem equitable and just.

7894938v1(70718.1)

DATED this 14th day of October, 2021.

        JENNINGS, STROUSS & SALMON, P.L.C.

        By  s/Garrett J. Olexa
           Garrett J. Olexa
           Jimmie W. Pursell, Jr.
           Chris M. Mason
           One East Washington Street, Suite 1900
           Phoenix, Arizona 85004-2554

7894938v1(70718.1)